Argued February 7, affirmed March 1, 1967

STATE BOARD OF CONTROL, *Respondent, v.*
LOPRINZI, *Appellant.*

424 P. 2d 889

*John U. Yerkovich,* Portland, argued the cause for appellant. With him on the brief was John P. Ronchetto, Portland.

*A. Richard Grant,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN and FORT, Justices.

FORT, J. (Pro Tempore).

Rose Loprinzi was involuntarily committed as an insane (mentally diseased) person to the Oregon State Hospital on December 8, 1931. She remained there until her death on May 25, 1964.

The agreed statement of facts, filed pursuant to ORS 19.088, establishes that the following orders by the proper probate court regarding her support at the State Hospital were duly entered:

1. $10.00 per month on December 8, 1931, to be paid by husband or children.

2. November 26, 1937, an order determining neither husband nor children could make any payment.

3. On November 5, 1946, an order requiring the husband to pay $13.00 per month thereafter, "* * * and a further sum of $250.00 which is to be accepted as payment in full for all past care of the above named patient."

Thereafter, when her husband Charles died, Mrs. Loprinzi inherited property. In July, 1951, her son, Philip, was thereupon appointed guardian of her estate. Some time later the Board of Control initiated negotiations:

"* * * looking forward to a settlement in lump sum of all sums claimed to be due for past care of

the ward and including future care of the ward for her lifetime."

in

"*    *    *    the sum of $5,000.00 as a compromise settlement of the claim,   *   *   *   with an additional provision that if the sum was not used up prior to the ward's death, the balance, if any, would be retained by the State Board of Control.   *   *   *"

On April 1, 1955, the guardian applied to and obtained from the probate court an order authorizing such settlement. Payment was accordingly made by check on which it was noted that it was "in full payment for all past and future care." This sum of money has since been retained by the Board.

No further demands were made by plaintiff except for "$10.00 per month for the ward's personal incidentals," apparently as a result of social security payments begun after the April, 1955, settlement. The parties agree such payment was not for the care and maintenance of the ward but for her personal use. The state at no time during the lifetime of Rose Loprinzi in any way attempted to avoid or set aside the settlement agreement. It fully abided by it. The guardian remained free to use the assets of the estate in any manner otherwise authorized by law.

Following the death of the ward on May 25, 1964, Philip Loprinzi was appointed administrator of her estate. Thereafter the state filed a claim with him for the cost of all care furnished Rose Loprinzi from the date of her commitment in 1931 to her death less amounts paid. The administrator rejected the claim. This action resulted.

The trial court held that the foregoing "*   *   * orders of 1931, 1937, 1946 and 1955   *   *   *   are of no legal force and effect   *   *   *", that "*   *   *   the

Board of Control was without any authority to enter into the agreement * * *" approved by the court in 1955, and that the same was therefore "* * * a nullity." It further held that the defendant's asserted defense of estoppel failed because it "* * * does not run against the sovereign." Accordingly it entered judgment for the plaintiff in an amount determined as provided by law.

The order of the probate court approving the payment of $5,000.00 pursuant to the compromise settlement was entered on April 1, 1955. The guardian paid the money on April 14, 1955, and the state deposited it on April 16, 1955. On May 18, 1955, Oregon Laws 1955, ch 597, was duly enacted, and became effective August 3, 1955. It was entitled:

### "AN ACT

"Relating to claims of the Oregon State Board of Control and the State Public Welfare Commission against *decedent's* estates and providing a procedure for enforcement thereof; creating new provisions; and amending ORS 117.100 and 428.010." (Emphasis ours.)

Section 1 amended ORS 117.110 by adding as item 7 in the chain of priorities of claims against an estate of a decedent:

"(7) * * * the claim of the Oregon State Board of Control for care and maintenance of mentally ill or mentally deficient persons to the extent provided in ORS chapter 428."

Section 2 of the Act amended ORS 428.010 by adding thereto a new subsection (3) which provided:

"(3) Upon the death of any person who is or has been an inmate of a state institution for the care of the mentally ill or the mentally deficient, his estate *shall be liable for the monthly cost* of

care and maintenance of such inmate as computed under ORS 428.070 *less any monthly payments made pursuant to a judicial determination of ability to pay under this chapter during the lifetime of such inmate.*" (Emphasis ours.)

Prior to the adoption of Oregon Laws 1955, ch 597, supra, ORS 428.010 provided:

"(1) If any person committed to a state institution for the mentally ill * * * is possessed of an estate or income sufficient to meet the expenses of his or her care and maintenance, without depriving of necessary support those dependent upon such person * * *, then the guardian * * * of such person shall be required to reimburse the State of Oregon for the cost and expense of the care, board, lodging and clothing of such person during his or her stay in such state institution.

"(2) All inmates of state institutions for the care of the mentally ill * * * shall be liable for the payment of the monthly charge fixed as provided by law for care and maintenance of inmates of such institutions, *according to their ability to pay* as provided in this chapter." (Emphasis ours.)

When the 1961 Guardianship Code was adopted the foregoing sections with changes not here relevant became ORS 179.620.

At the time of the "compromise settlement" in April, 1955, ORS 428.020 defined "ability to pay" as follows:

"(2) 'Ability to pay,' * * * means that the responsible person * * * have an estate or income, or both, sufficient to pay the amount determined by the court after allowing adequately for the current living expenses *and other reasonable necessary present or future obligations of the responsible persons and all their other dependents.*" (Emphasis ours.)

From the foregoing statutes it is clear that the legislature set a different standard by which the obligation of the estate of the inmate was to be measured during her lifetime from the standard to be employed in measuring the obligation of the estate of the inmate after death. During the lifetime of the inmate it was based upon her "ability to pay." After her death it was for the total monthly cost while hospitalized. Furthermore, the bill for care is a preferred claim against the decedent's estate. ORS 117.110, supra.

Certainly the legislature is empowered to make this distinction. The very definition in the statute (ORS 428.020) rests upon a rational and humane basis. A guardian in dealing with the estate of his ward may properly consider future needs as well as present ones—as for example the ward's needs in event of future release from the hospital (ORS 126.225); other valid claims against the ward's estate (ORS 126.311); and the needs of others who may be or become dependent upon the ward (ORS 126.295). The statutory standard of "ability to pay", supra, during the ward's lifetime is not intended to be the same as the standard of ORS 179.620(3), supra.

Assuming, without deciding, that the Board of Control had the authority to make the settlement of April, 1955, with *the guardian* of the estate of Rose Loprinzi, such a settlement in the absence of any other evidence must be presumed to have been determined according to law including consideration of her "ability to pay." ORS 41.360(15)(33). There is nothing in the record or in the agreed statement of facts to cause us to reach a different conclusion. The "compromise settlement," we hold, could only and did relate solely to the inmate's liability during her lifetime based upon her ability to

pay. No question of estoppel, therefore, is here involved.

Following the death of Rose Loprinzi and the appointment of an administrator, the Board of Control properly filed its claim against the estate as provided in ORS 179.740(1). The same statute in Section 3 provides:

"(3) The board may compromise any claim against the estate of a deceased person who was at a state institution during the pendency of the probate proceeding by accepting other security therefor or in any other manner deemed equitable. *The board may waive payment of any such claim in a case in which it finds that the enforcement thereof in whole or in part would be inequitable.*" (Emphasis ours.)

Under this provision how much, if any, of this claim should be waived has been placed by the legislature within the discretion of the Board of Control, not the probate court. Since the administrator rejected the claim, however, the Board was required to bring this action in order to establish its validity.

It follows, then, for the reasons stated that the judgment of the court below is affirmed.