74065. GRESHAM v. DEPARTMENT OF HUMAN RESOURCES.
(360 SE2d 736)

BANKE, Presiding Judge.

The Georgia Department of Human Resources sued the appellant pursuant to the Child Support Recovery Act, OCGA § 19-11-1 et seq., seeking to require him both to support an illegitimate minor child he had allegedly fathered and to reimburse the state for $6,231 in public assistance payments the department had allegedly made on the child's behalf in the past. Almost a year before the suit was filed, the appellant had signed a written agreement with the department to submit to human leukocyte antigen (HLA) blood testing to determine whether he was in fact the child's father. In return, the department had agreed not to pursue any support action against him in the event the test results excluded the possibility that he was the child's father. Both parties further agreed that the test results would be admissible as evidence in future court proceedings, "without objection for whatever probative value they may have [and] without the necessity of any accompanying testimony by any person with respect to said test results." Finally, it was agreed by the appellant that in the event the test results established to a probability of 95 percent or more that he was the child's father, they would be deemed conclusive on that issue.

The blood test established to a probability of 98.88 percent that the appellant was the child's father. Accepting these results as conclusive on the issue of paternity pursuant to the terms of the agreement, the trial court denied the appellant's demand for a jury trial in the present action and, following an evidentiary hearing, entered judgment in favor of the department. This appeal followed. *Held*:

1. The appellant contends that the trial court erred in denying his demand for a jury trial and in treating the test results as conclusive on the issue of paternity. We agree that to the extent the agreement purported to preclude the appellant from contesting paternity or from demanding a jury trial in any future action the department might bring to enforce his child-support obligations, it was contrary to public policy and unenforceable. Accord *CCC Bldrs. v. Augusta,*

237 Ga. 589, 591 (229 SE2d 349) (1976). Cf. 17 AmJur2d Contracts, § 193, p. 564. The court's actions in this regard must, however, be considered harmless under the circumstances of the present case, for the appellant did not offer any evidence tending either to cast doubt on the test results or to show that he was not in fact the child's father. The test results themselves were clearly admissible into evidence under the terms of the agreement, which, on this point, was fully enforceable. Cf. *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977) (holding that the results of a lie detector test are admissible in evidence where the parties have entered into an express stipulation to that effect). As the test results constituted the only evidence introduced or offered on the issue of paternity, it follows that the department would have been entitled to judgment as a matter of law on this issue even had it been fully tried before a jury.

2. The appellant contends that the trial court erred in refusing to "acknowledge that the blood tests . . . was [sic] disputed" and in failing to give him an opportunity to obtain additional tests. While the appellant's counsel maintained throughout the trial of the case that the results of the tests were disputed, he offered no evidence or explanation whatever tending to show the basis for the dispute. The agreement between the parties specified that "[i]n the event that the test results are disputed, additional testing will be at the expense of the requesting party." The appellant did not obtain any such additional tests prior to trial, nor did he move for a continuance to obtain additional time to do so. Consequently, this enumeration of error presents nothing for review.

3. The appellant contends that the trial court erred in failing to provide him additional time for discovery. However, as no motion or request for additional discovery was made prior to trial, and as no showing has ever been made of the need for additional discovery, this enumeration of error also presents nothing for review.

4. The appellant contends that the department was not entitled to sue for reimbursement of the public assistance payments made on the child's behalf without first giving him notice, pursuant to the Supreme Court's decision in *Burns v. Swinney*, 252 Ga. 461 (314 SE2d 440) (1984), of its intention to hold him accountable for such payments. We find *Burns* to be inapplicable under the facts of the present case. There, the custodial parent had been awarded custody of the child pursuant to the terms of a divorce decree which had placed no obligation on the defendant non-custodial parent to pay child support. The Supreme Court held that under such circumstances the state was obliged, pursuant to OCGA § 19-11-10 (c), to notify the defendant of her duty of support and of the fact that an application for public assistance benefits had been made on the child's behalf prior to seeking a judgment against her for reimbursement of such benefits.

In the present case, there was no court order in existence which could have been interpreted as relieving the appellant of his duty to support the child; and since the appellant did not in any event acknowledge paternity, it presumably would have availed him nothing to have received written notice from the department of its intention to hold him accountable for such support. Moreover, if such notice was required, it was effectively provided by the language of the agreement entered into by the appellant and the department a year before the suit was filed, wherein the department clearly manifested its intention to hold the appellant accountable for the support of the child in the event the blood tests showed him to be the child's father to a probability of at least 95 percent. For these reasons, we hold that the department was properly allowed to obtain reimbursement in the present action for public assistance payments previously made on the child's behalf.

*Judgment affirmed. Deen, P. J., McMurray, P. J., Sognier and Pope, JJ., concur. Birdsong, C. J., Carley and Benham, JJ., dissent. Beasley, J., dissents in judgment only.*

BENHAM, Judge, dissenting.

While I concur with the majority as to Divisions 2, 3, 4, and 5, and that portion of Division 1 that says the agreement is void as against public policy and that the test results are admissible, the consensus dissolves as to that portion of Division 1 that says that the denial of the right to a jury trial is harmless error.

The analysis given by the majority in Division 1 is excellent insofar as it shows that the trial court erred in ruling that appellant waived his right to a jury trial. However, the majority opinion jumps the tracks when it assigns the trial court's denial of a jury trial to the category of harmless error.

The right to a jury trial is firmly entrenched in the framework of our system of American jurisprudence, and its hallowed place is evidenced by OCGA § 9-11-38, which states: "The right of trial by jury as declared by the Constitution of the state or as given by a statute of the state shall be preserved to the parties inviolate."

The above-mentioned Code section takes its lead from Art. I, Sec. I, Par. XI of the 1983 Georgia Constitution: "The right to a trial by jury shall remain inviolate, except that the court shall render judgment without the verdict of a jury in all civil cases where no issuable defense is filed and where a jury is not demanded in writing by either party." A determination as to paternity has lifelong consequences, not only legally, but also financially, morally, and socially. Therefore, in meeting our commitment to assure that children born out of wedlock are supported, we must not allow the emotions that attend such proceedings to prevent us from assuring that statutorily mandated proce-

dural safeguards are accorded the litigants.

The majority asserts that the trial court's erroneous refusal to afford appellant his right to a trial by jury was harmless because appellant offered no evidence to cast doubt on the test results or to show that he was not the child's father and because the test results conclusively showed paternity. I disagree with both assertions.

While it is true that appellant did not offer evidence, the inquiry must not stop there. A review of the record shows that the hearing conducted in the trial court was so infected with irregularity as to amount to a denial of due process of law. For instance, appellant had filed motions which were not included in the file available to the trial judge. Although the trial court was informed that the case had been assigned to another judge and that the motions were most likely in the possession of that other judge, the hearing proceeded. The motions included a challenge to the jurisdiction of the trial court over appellant, but appellant received no hearing on that motion or on the others. Appellant's counsel indicated several times that he had not had enough time to complete preparation for the trial, having seen the blood test agreement for the first time only ten days before trial. Appellant's counsel also informed the trial court that he had been under the impression that the hearing was of a preliminary nature, and was not the trial of the case. Considering all the irregularity tainting the hearing which produced the judgment now on appeal, I cannot agree that the denial of appellant's fundamental right to trial by jury, a denial based on an error, was harmless.

As to the assertion in the majority opinion that the evidence of record demanded the judgment, I once again turn to the record. Although the trial court advised appellee's counsel that it would be necessary to have the blood test results marked as evidence "and made a part of the record," appellee's counsel took only half of the advice: the test results were marked but not thereafter tendered. Appellant's counsel's objection to the entry of judgment on the ground that the test results had not been admitted into evidence before appellee rested was countered by the trial court's observation that the test results were attached to the pleadings. Of course, pleadings are not evidence, and where the allegations of the pleadings have been denied, the pleadings and attachments thereto do not take the place of properly admitted evidence. See *Arrington v. Horton*, 48 Ga. App. 272 (1) (172 SE 677) (1934).

After this case was docketed in this court, appellee's counsel moved the trial court, purportedly pursuant to OCGA § 5-6-41 (f), to make the test results a part of the record. I find the trial court's order granting that motion defective for at least two reasons.

One is that there is nothing whatever in the record to support the assertion in the motion and in the trial court's order, prepared by

appellee's counsel, that the parties had mistakenly believed that the evidence had been admitted. In fact, appellant's counsel informed the trial court that the test results had not been admitted into evidence.

The second reason is that appellee and the trial court are using OCGA § 5-6-41 (f) for a purpose not provided for by that section, to introduce *after the entry of judgment* the evidence essential to the entry of that judgment. The statute is for the purpose of making the record speak the truth, not for supplying fatal deficiencies after the fact. See *Ray v. Standard Fire Ins. Co.*, 168 Ga. App. 116 (1) (308 SE2d 221) (1983). It is clear from the record of this case that the essential evidence was never admitted into evidence in the trial court and could not legally be the basis for that judgment. Consequently, it cannot be said that the denial of appellant's right to a jury trial was harmless because the evidence demanded the judgment.

As early as 1888, in *Covington v. Western &c. R. Co.*, 81 Ga. 273 (6 SE 593), our Supreme Court ruled that when a question of negligence was removed from the jury's consideration, even though the evidence authorized the verdict, it was reversible error. As recently as 1980, we ruled that a failure to submit an issue to the jury was reversible error. *Nestlé Co. v. J. H. Ewing & Sons*, 153 Ga. App. 328 (1) (265 SE2d 61) (1980). Therefore, I would reverse the trial court and grant a new trial.

DECIDED JULY 16, 1987 —
REHEARING DENIED JULY 31, 1987 — ▮

*Lewis R. Slaton, District Attorney, Rita D. Coleman, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Foil Russell, Assistant Attorney General,* for appellee.