44972. GRESHAM v. GEORGIA DEPARTMENT OF
HUMAN RESOURCES.
(363 SE2d 544)

MARSHALL, Chief Justice.

We granted certiorari in this case, *Gresham v. Dept. of Human Resources*, 184 Ga. App. 17 (360 SE2d 736) (1987), which is a child-support recovery action, OCGA § 19-11-1 et seq., brought by the Department of Human Resources against the putative father of an illegitimate child.

After the department notified the defendant of its intention to hold him liable for the public assistance payments made on the child's behalf, the department and the defendant entered into a written agreement requiring the defendant to submit to an HLA paternity blood test. Under this agreement, the test results would be deemed conclusive if they established the defendant's paternity of the child to a probability of 95% or more, and the department would not pursue any child-support recovery action against the defendant if the test excluded the possibility that he is the child's father.

Based on the fact that the test established the defendant's paternity to a 98.88% probability, the trial court denied the defendant's demand for a jury trial and entered judgment in favor of the department.

On appeal, in an en banc opinion, the Court of Appeals affirmed. Citing the primary authority of *CCC Bldrs. v. Augusta*, 237 Ga. 589 (229 SE2d 349) (1976), and the secondary authority found at 17

AmJur2d 563, Contracts, § 193, the Court of Appeals' majority held "that to the extent the agreement purported to preclude the [defendant] from contesting paternity or from demanding a jury trial in any future action the department might bring to enforce his child-support obligations, it was contrary to public policy and unenforceable." 184 Ga. App. at p. 17. However, citing *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977), by way of comparison, the majority held that even though the agreement was unenforceable as against public policy, the test results themselves were nonetheless admissible in evidence under the terms of the agreement.

In granting certiorari in this case, we expressed an interest in reviewing the foregoing holdings of the Court of Appeals' majority. After the grant of certiorari, the Atlanta Legal Aid Society, Inc., has filed an amicus curiae brief in which it is argued that the Court of Appeals' majority, in Div. 4 of their opinion, erred in rejecting the defendant's argument that, under OCGA § 19-11-10, as interpreted in *Burns v. Swinney*, 252 Ga. 461 (314 SE2d 440) (1984), the department was not entitled to sue for reimbursement of public assistance payments made prior to the date the defendant was first given notice of the department's intent to hold him so liable.

Based on our agreement with the foregoing argument, we affirm in part, reverse in part, and remand for further proceedings consistent herewith. Specifically, we hold that, to the extent that the parties' agreement precludes the defendant from contesting paternity in any future child-support recovery action, it is not void as against public policy, and, for this reason, the trial court did not err in denying the defendant's demand for jury trial. We further hold that OCGA § 19-11-10, as interpreted in *Burns v. Swinney*, supra, is applicable here, and prohibits the department from recovering public assistance payments made on the child's behalf prior to the defendant's first receiving notice of the department's intent to hold him liable.

1. The *CCC Builders* case stands as authority for the proposition that a broad arbitration clause is void as against public policy as an attempt to oust the courts of jurisdiction over justiciable disputes arising between the parties, although an arbitration clause limited in its applicability to the question of damages, or requiring arbitration as a condition precedent to a right of action, will be enforced. The general view, as expressed in the AmJur section cited by the Court of Appeals, is that although the substantial body of case law in this area supports the *CCC Builders* holdings, the cases do, however, also hold that the parties may agree that certain facts exist without further proof of their existence, or "that the issue joined is against them and suffer judgment to be taken accordingly." 17 AmJur2d, supra at p. 564.

Consequently, we hold that since the parties' agreement here is a

limited agreement related to the adjudication of a single issue, the agreement is not void as against public policy.

2. In *Burns v. Swinney*, 252 Ga., supra, the father was awarded custody of the parties' two minor children in a divorce action, and the mother was not ordered to pay child support. The father remarried, and the children's stepmother applied for, and received, Aid-to-Families-with-Dependent-Children (AFDC) payments. The department later instituted a child-support recovery action against the mother. The mother argued, inter alia, that she had not been given notice pursuant to OCGA § 19-11-10. The mother was nonetheless ordered to make partial reimbursement to the state, the Court of Appeals affirmed, and on certiorari we reversed.

In *Burns*, we reviewed subsections (a), (b), and (c) of OCGA § 19-11-10, which provide:

"(a) In cases in which a parent's obligation to support has not already been established by a court order, the department may conduct investigations to determine whether a responsible parent is able to support the dependent child receiving public assistance. The department shall notify the parents of any such planned investigation.

"(b) The department shall notify the parent of his legal duty to support his child or children and shall request information concerning his financial status in order to determine whether he is financially able to provide support.

"(c) The notice shall inform the parent that he may be liable for reimbursement of any support furnished prior to determination of his financial circumstances as well as future support."

The Court of Appeals in *Burns v. Swinney*, 168 Ga. App. 902 (1) (310 SE2d 733) (1983) held that the notice requirement of § 19-11-10 (b) was inapplicable where, as there, the department did not make an investigation, as authorized by § 19-11-10 (a), to determine the parent's ability to support a child receiving public assistance. *Burns*, 252 Ga. at p. 463. We disagreed with this holding, observing that where the child-support obligation has not been established by a court order, the Court of Appeals' decision in *Burns* would allow the parent to be "subjected to unlimited liability, without notice . . . ." 252 Ga. at p. 464.

Consequently, in *Burns* we held, "that where parents are divorced and custody is awarded to one parent, where the parent not having custody has not been ordered by any court to pay child support, and where the nonpaying parent's address is known or can be ascertained, the state, although not required to make an investigation as to the nonpaying parent's ability to support the child before making AFDC payments, see OCGA § 19-11-10 (c) . . . , must notify the parent of the duty of support and of the application for AFDC payments before such parent becomes obligated to reimburse the state

for such payments. [First,] we do so . . . to protect parents not otherwise subject to a court order or agreement as to child support, so that such parents may contest eligibility for AFDC payments or keep records of the support they in fact are providing. A parent should not be liable to the state for AFDC payments made, without notice to the parent, to ineligible recipients or when the parent is in fact paying for the support of a child. Second, we do so because the failure to provide for notice and an opportunity to be heard could render the state's right of recovery unconstitutional for lack of notice and due process." Id.

3. The Court of Appeals' majority found *Burns v. Swinney*, 252 Ga. 461, supra, to be inapplicable under the facts of this case, because, unlike *Burns*, there was no extant court order here relieving the appellant of his child-support obligation.

4. Under our decision in *Burns v. Swinney*, supra, and under the language employed in OCGA § 19-11-10 (a), we cannot agree with this holding of the Court of Appeals in this case.

The material fact common to both this case and *Burns* is that the parent's obligation to support has not, in either case, been established by a court order; thus, the notice requirement contained in § 19-11-10 is applicable in both cases under the express language employed in subsection (a) of that statute.

In addition, purely as a matter of policy, we are of the opinion that the circumstances in this case, in which there has not even been an adjudication of paternity, are even more compelling than in *Burns* for holding that, as a prerequisite to the attachment of liability, notice to the parent sought to be held liable is required.

5. Since, in this case, the Court of Appeals has affirmed in toto the judgment against the defendant for the entire amount of public assistance payments made by the department on the child's behalf, and since it appears from the record that part of these sums was paid prior to the defendant's being given notice and part of the sums was paid after the defendant's being given notice, we reverse and remand to the trial court for determination of this factual issue, and for the entry of judgment against the defendant consistent with this opinion.

*Judgment affirmed in part, reversed in part, and remanded for further proceedings. All the Justices concur.*

Decided January 14, 1988 —
Reconsideration denied February 4, 1988.

*William R. Hurst, Dana A. Azar,* for appellant.

*Michael J. Bowers, Attorney General, Mary Foil Russell, Assistant Attorney General, William M. Droze,* for appellee.

*M. Kathryn Hoover, Jenny K. Mittelman,* amicus curiae.