Belknap
No. 88-267

THE STATE OF NEW HAMPSHIRE

v.

HENRY DIONNE, JR.

May 3, 1989

*Stephen E. Merrill,* attorney general (*David S. Peck,* assistant attorney general, on the brief and orally), for the State.

*Murphy, McLaughlin & Hemeon,* of Laconia (*James M. Carroll* on the brief and orally), for the defendant.

SOUTER, J.  In response to the State's petition brought against an individual to determine paternity, to recover the amount of public assistance paid for his child's benefit, and to set the level of his prospective support obligation, the Superior Court (*Dickson,* J.) denied reimbursement for support paid prior to the commencement of the action and limited the father's prospective obligation to the amount of public assistance eligibility, less one-half of the father's payments for the child's health insurance. The State appeals the respective denial and limitation, and as to each we reverse and remand for proceedings consistent with this opinion.

The child was born in August, 1986, and on May 15, 1987, the State Division of Human Services, RSA chapter 161 (Supp. 1988), began to pay benefits on the child's behalf under the scheme of aid to families with dependent children (AFDC), RSA 167:6, V (Supp. 1988). After an earlier unsuccessful paternity action against a different defendant, *see* RSA 168–A:2, the division began this action in November, 1987, to establish the defendant's paternal responsibility, and to recover the amount of benefits paid and to be paid on the child's behalf. Whether the State's original pleadings also included a request for prospective support at a level exceeding the amount of continuing AFDC benefits is subject to dispute. Following a hearing in May, 1988, at which the defendant admitted paternity, the trial court issued the orders under appeal.

No question is raised about the State's general entitlement to reimbursement for assistance actually paid for the child's benefit. *See* RSA 161–C:7, I (Supp. 1988) (payment of public assistance for benefit of dependent child creates corresponding debt from responsible parent to division); RSA 161–C:22, I (Supp. 1988) (receipt of public assistance for child constitutes assignment to division of right to recover support). The trial court, nevertheless, denied reimbursement for any amounts paid prior to the commencement of this action. Although the court did not explain this feature of its order, the denial may have reflected a mistaken application of *City of Claremont v. Truell*, 126 N.H. 30, 489 A.2d 581 (1985).

In *Truell*, this court held that due process barred the State from charging a responsible parent for expenditures under RSA chapter 169–D (Supp. 1988) on behalf of a child in need of services (CHINS), unless notice of potential liability had been given prior to determining the child's need for the services later provided. *Id.* at 39–40, 489 A.2d at 588. In *Clarke v. Clarke*, 128 N.H. 550, 517 A.2d 816 (1986), however, we explained in considered dictum that *Truell* had no application to an action brought under RSA 161–C:4

(Supp. 1988) to obtain reimbursement for basic child support. We characterized the CHINS expenditures at issue in *Truell* as discretionary in that a court had to determine, first, whether third-party services were warranted and, if so, which services would be appropriate. *Id.* at 551, 517 A.2d at 817. Because the parent's liability would depend on such determinations, and because the determinations were not simple either/or choices, the court concluded that a parent's awareness of potential liability could affect both the parent's interest in participating in the determination hearing and the resulting court order. *Id.* We then contrasted the issues underlying the State's determination to make AFDC payments for

> "the basic necessities of [a] child's survival. No discretionary judgment was necessary, for example, in deciding that the defendant's child needed food and shelter. Consequently, there would [have been] no point in requiring notice and hearing so that the defendant could contest the need for such support. In these circumstances notice is timely if it allows the defendant an opportunity to dispute his relationship to the recipient of the assistance, to contest the amount of debt, and to contest any claim for actual repayment before a reimbursement order is entered against him."

128 N.H. at 551–52, 517 A.2d at 818. We follow *Clarke* today. On remand, the superior court should amend its order to provide for reimbursement for all support paid on the child's behalf starting in May, 1987.

The State also appeals the portion of the order prospectively requiring the defendant to make continuing periodic payments, insofar as the trial court declined to set a level of support consistent with the statutory guidelines of RSA chapter 458-C (Supp. 1988), which became effective on April 30, 1988. Instead, the court limited the defendant's obligation to the amount of the State's anticipated AFDC payment on the child's behalf, less one-half the amount of any premium paid by the defendant for the child's health insurance.

The defendant responds with the procedural objection that the State's pleadings in the superior court sought nothing beyond reimbursement, and that the scope of this appeal should be likewise limited. While the defendant may be correct about the content of the State's original petition, which is not part of the record before us, the State's motion for reconsideration of the trial court's order did raise a claim on the child's behalf for support in accordance with the guidelines, to which the defendant interposed no objection

based on the content of the original petition. We therefore see no procedural impediment to considering the merits of the State's request for future support on the child's behalf, which the State has clear statutory authority to seek. *See* RSA 168-A:2, (1); RSA 546-A:7.

The State claims two errors in the order under appeal. First, it argues that in issuing a support order after the effective date of the statutory guidelines the trial court was bound to follow the statute, a position for which RSA 458-C:4, I (Supp. 1988) is express authority: "Subject to the provisions of RSA 458-C:5, these guidelines shall be applied in all child support cases . . . unless the specific issue of child support obligation has been resolved by agreement of the parties." Although RSA 458-C:5, I (Supp. 1988) provides a non-exhaustive list of exceptional circumstances in which the guidelines are not controlling, "[i]f the guidelines are not used the [court] shall explain in the order why they are not used." RSA 458-C:4, II (Supp. 1988). In this case, the guidelines were not followed, no exception to the obligation to apply them is apparently applicable, and the court offered no justifying explanation for declining to adhere to them. The order was therefore erroneous, and prejudicial, as well, inasmuch as application of the guidelines would result in a higher level of support for the child than the level that would be funded in any event under AFDC.

We also agree with the State in its second claim, that the court erred in allowing the defendant a prospective credit against his support obligation equal to one-half of any premium he should pay for the child's health insurance. While the statute provides that such a payment shall be taken into consideration, it does so by allowing a deduction equal to one-half the premium from the defendant's net income, on the basis of which the amount of his support obligation is determined. RSA 458-C:3, II (Supp. 1988). When recalculating support on remand, therefore, the premium payment should be so treated.

*Reversed and vacated in part; remanded.*

All concurred.