**Richmond**

CLYDE S. MORRIS

v.

COMMONWEALTH OF VIRGINIA, ex rel.

No. 1937-90-2

Decided September 10, 1991

COUNSEL

Ronald L. Morris (Berry & Early, on briefs), for appellant.

Dwight D. Johnson (Division of Child Support Enforcement, on brief), for appellee.

OPINION

**BARROW, J.**—This appeal is from a review of an administrative agency decision by the Circuit Court of Greene County. It arises out of an assessment by the Virginia Department of Social Services (the "Department") against a father for past public assistance paid for the benefit of his child. Clyde Morris, appellant, contends that he was denied due process of law because he was not given notice that public assistance was being paid for the benefit of his child, that the trial court erred in concluding that the Commonwealth's claim was not barred by laches, and, finally, that the trial court erred in using the guidelines contained in Code § 20-108.2 to determine the amount he is required to reimburse the Commonwealth for public assistance paid prior to the adoption of these guidelines. We conclude that due process of law does not require that a responsible parent receive notice of the proposed payment of public assistance prior to its being paid so long as he receives notice and is given an opportunity to be heard before a final assessment is made against him. We further conclude that the doctrine of laches is unavailable to the appellant in this case since the doctrine may not be set up as a defense against the Commonwealth acting in its governmental capacity. However, we conclude that the trial court erred in using the guidelines contained in Code § 20-108.2 to determine the appellant's obligation for years occurring prior to the adoption of these guidelines.

The appellant's child was born during the appellant's marriage to the child's mother. The appellant and the child's mother separated in 1972, and the appellant had no contact with either the child or his mother from 1972 through 1983.

The appellant was incarcerated in 1983, at which time the child's mother applied for Aid to Dependent Children ("ADC") and listed the appellant's address as the Joint Security Complex in Charlottesville, Virginia. The appellant was released from incarceration in November, 1986. However, it was not until September 5, 1989 that he received notice of a debt from the Department assessing him $8,008 as provided for in an administrative order as required by statute. *See* Code § 63.1-252.1. The order stated that the appellant was responsible for ADC paid on behalf of his child from March 1, 1983 to June 30, 1988. The appellant contested the order and was given an administrative hearing, which resulted in the debt being reduced to $4,160 by the Bureau of Child Sup-

port Enforcement. The Juvenile and Domestic Relations District Court dismissed the appellant's appeal of the decision, and the Circuit Court also dismissed his appeal and affirmed the order requiring him to pay this debt.[1]

In Virginia, any public assistance paid for the benefit of a dependant child creates a debt due and owing to the Department by the person who is responsible for support of that child. Code § 63.1-251. In the absence of a court order or divorce decree fixing the amount of child support due, the Commissioner of the Department may proceed against the responsible person "whose support debt has accrued or is accruing." Code § 63.1-252.1. The Commissioner is required to initiate such proceedings "by issuing notice containing the administrative support order which shall become effective unless timely contested." *Id.* The responsible parent has ten days to file an answer to the notice and, upon doing so, is given the right to an administrative hearing on the matter. *Id.*

### Due Process of Law

In September, 1989, the appellant received an administrative order determining that a debt for ADC payments made for the benefit of his child had accrued between March, 1983 and June, 1988. The appellant argues that, since the debt became "due and owing" as soon as public assistance was paid, notice of the debt six and one-half years after it began accruing is insufficient notice. He contends that, to satisfy due process requirements, he should have been notified of his potential liability before the debt began accruing.

The constitutionality of the notice requirements of Code § 63.1-252.1 is a question of first impression in Virginia. Other states, however, have addressed due process challenges to similar statutory schemes.

In this case, the trial court relied on *Mallatt v. Luihn*, 206 Or. 678, 294 P.2d 871 (1956), in finding that the notice requirements of the Virginia statute satisfy due process. In *Mallatt*, the appellant was notified by the state in September, 1953, of her liability for public assistance payments made to her parents during the calendar year 1952. *Id.* at 685, 294 P.2d at 875. The appellant con-

---

[1] Proceedings in Juvenile and Domestic Relations Court and Circuit Court in this type of case are *de novo. See* Code §§ 63.1-268.1 and 16.1-296.

tended that "the enforcement of [her] liability in an action at law without a previous administrative hearing is a deprivation of property without due process of law." *Id.* at 692, 294 P.2d at 878. The Oregon Supreme Court disagreed, holding that since the statute requires notice of a hearing and an opportunity to be heard before liability becomes final, the procedure for recovering public assistance payments from responsible relatives complies with the requirement of due process. *Id.* at 696, 294 P.2d at 879.

The Commonwealth, in arguing the constitutionality of the Virginia scheme, cites *State v. Dionne*, 557 A.2d 653 (N.H. 1989). In *Dionne*, the state sought to recover from the defendant AFDC payments made for the benefit of the defendant's child. *Id.* at 654. The payments on the child's behalf began in May, 1987, and the defendant was notified of his liability in November, 1987. *Id.* The trial court denied reimbursement for any amount paid prior to November, 1987. *Id.* The New Hampshire Supreme Court reversed, holding that " 'notice is timely if it allows the defendant an opportunity to dispute his relationship to the recipient of the assistance, to contest the amount of debt, and to contest any claim for actual repayment before a reimbursement order is entered against him.' " *Id.* at 655 (quoting *Clarke v. Clarke*, 517 A.2d 816, 818 (N.H. 1986)). This holding was based on the court's finding that no discretionary judgment is involved in a state's determination to make AFDC payment for " 'the basic necessities of [a] child's survival.' " *Id.* (quoting *Clarke*, 517 A.2d at 818).

Two jurisdictions have reached an opposite result on this issue. In *Gresham v. Department of Human Resources*, 257 Ga. 747, 363 S.E.2d 544 (1988), the court held that the state was prohibited "from recovering public assistance payments made on [a] child's behalf prior to the defendant's first receiving notice of the department's intent to hold him liable." *Id.* at 748, 363 S.E.2d at 545. This rule applies "where the nonpaying parent's address is known or can be ascertained." *Id.* at 749, 363 S.E.2d at 546. The court stated two reasons for its holding: (1) "so that such parents may contest eligibility for AFDC payments or keep records of the support they in fact are providing," and (2) failure to provide notice of liability before it accrues "could render the state's right of recovery unconstitutional for lack of notice and due process." *Id.* at 750, 363 S.E.2d at 546. *See also Burns v. Swinney*, 252 Ga. 461, 314 S.E.2d 440 (1984) (upon which *Gresham* relies).

Similarly, in *Baker v. Department of Health & Rehabilitative Services*, 526 So. 2d 1057 (Fla. Dist. Ct. App. 1988), where the state of Virginia initiated proceedings under URESA to recover from a Florida resident AFDC payments made for the benefit of her child who lived with her mother in Virginia, the court remanded the case for an evidentiary hearing to determine whether the appellant knew that the AFDC payments were being made. *Id.* at 1059. If, on remand, the trial court found that the appellant "had no knowledge of those payments, then no award requiring repayment of the AFDC payments made prior to the petition should be made." *Id.* The court noted that to require the appellant to repay the AFDC payments of which she had no knowledge presented "both due process and laches problems." *Id.* The court stated that notice of liability would have allowed the appellant to limit or avoid liability by seeking custody of the child, pursuing "her former husband to enforce his obligation," or obtaining "an adjudication of her inability to pay all, or part, of the amount." *Id.*

■ The reasoning of the Oregon and New Hampshire courts more accurately reflects the applicable law regarding notice under these circumstances. First, those holdings are consistent with the United States Supreme Court's position that the due process clause does not require pre-liability notice so long as a full hearing is held before liability becomes final. Second, like many areas of the law, pre-liability notice is not required by the common law doctrine of necessaries, which is analogous to the type of debt at issue in this case.

■ The due process clause, as interpreted by the United States Supreme Court, does not require pre-liability notice. At a minimum, due process requires that an individual receive notice and an opportunity to be heard before he or she is deprived of life, liberty, or property by adjudication. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Only before an individual is to be "*deprived* of any significant property interest" must that individual "be given an opportunity for a hearing." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis added). In an administrative proceeding, the hearing need not be held at a preliminary stage in the proceeding "so long as the requisite hearing is held before the final administrative order becomes effective." *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 598 (1950).

■ At common law, the father was held responsible for any "necessaries" provided to his spouse and child by a third party. H. Clark, *The Law of Domestic Relations in the United States* § 6.3 (2d ed. 1987). Although the doctrine of necessaries has been abolished in Virginia because it contains an unconstitutional gender-based classification, *see Schilling v. Bedford County Memorial Hospital*, 225 Va. 539, 544, 303 S.E.2d 905, 908 (1983), it nonetheless provides a useful analogy on the notice issue in this case. Under the necessaries doctrine, when a wife or child obtains necessary goods or services from a third party, the third party can hold the father directly liable for reimbursement of the cost of those goods or services. H. Clark, *supra*, at § 6.3. For the doctrine to apply and liability to attach, consent of the father for the dependent to obtain necessaries is not required. *Id*. The doctrine does not contemplate prior notice that necessaries will be or are being provided to the dependent in order for the third party to later recover from the father. Instead, the father's basic obligation of support gives rise to the debt, and the failure of the father to take action which would prevent the need of support from arising does not form the basis for requiring notice. Under the necessaries doctrine, due process has never been held to require a person to have notice in order to carry out his basic parental responsibilities before being liable when someone else assumes those responsibilities.

■ Under Code § 63.1-252.1, a person responsible for the support of a child is assured notice and an opportunity to be heard prior to a final adjudication of any indebtedness. At the hearing, a responsible party may contest liability for the debt and the amount of the debt. To require pre-liability notice would unduly burden the Commonwealth since locating the parent may often prove difficult in these types of cases. However, even without considering the Commonwealth's burden in locating an absent parent, we would not require pre-liability notice for the simple reason that a parent's knowledge that he or she has a child is notice enough of the responsibility to provide basic necessities for that child. Therefore, we hold that Code § 63.1-252.1 satisfies the constitutional requirements of due process by providing a responsible party with notice and an opportunity to be heard before the judgment is final.

To the extent that the appellant's complaint focuses on a lack of notice within a reasonable time after his liability began to accrue, his real concern is with the lack of a statute of limitations and the refusal of the court to apply the doctrine of laches. The General Assembly removed the six year statute of limitations on collection of ADC debts from Code § 63.1-270 in 1988, leaving that statute without a statute of limitations. 1988 Va. Acts. c. 906. We may not substitute our judgment for that of the legislature, especially since the appellant makes no claim that due process of law requires a statute of limitations in this case. We do, however, address the issue of laches raised by the appellant.

### Laches

■ The appellant claims that the trial court erred in ruling that the Commonwealth's claim is not barred by the doctrine of laches.[2] We need not address the facts upon which the trial court relied in finding that laches did not bar the Commonwealth's claim because "laches may not be set up as a defense against the Commonwealth acting in its governmental capacity." *In Re: Dep't of Corrections*, 222 Va. 454, 465, 281 S.E.2d 857, 863 (1981). Hence, we conclude that the doctrine of laches is unavailable to the appellant as a defense in this case.

### Child Support Guidelines

The appellant contends that the trial court erred in affirming the amount of the debt because the hearing officer used the child support guidelines of Code § 20-108.2 to determine a debt which accrued prior to the adoption of these guidelines.

■ We agree. The appellant's debt accrued from March, 1983 to June, 1988. The child support guidelines were first enacted in April, 1988. 1988 Va. Acts c. 907. For most of the time the appellant's debt was accruing, the guidelines were not in effect. We conclude that the retroactive application of the guidelines to de-

---

[2] The Commonwealth argues that the appellant failed to properly preserve this issue and the issue concerning the child support guidelines for appellate review because his objections lack the specificity required by Rule 5A:18. However, since the trial court specifically addressed and ruled on these issues in its letter opinion, we conclude that the purpose of the contemporaneous objection rule — to give the trial judge the opportunity to understand the precise question he or she is called on to decide — is satisfied. *See Simmons v. Commonwealth*, 6 Va. App. 445, 450, 371 S.E.2d 7, 10 (1988), *rev'd on other grounds*, 238 Va. 200, 380 S.E.2d 656 (1989).

termine the appellant's debt was error. Instead, in determining the appellant's debt, the trial court should have determined the amount the appellant was required to pay based on relevant factors found in Code § 20-108.2, the child support statute. This determination should be made based on factors existing at the time the assistance was being paid. Code § 63.1-251 required that the debt be "in an amount determined to be consistent with a responsible person's ability to pay." We hold that this statute refers to ability to pay at and during the time public assistance is being paid for the benefit of the child. In doing so, the agency may consider as a guide any administrative child support guidelines used by the Department which were in effect at the time the debt was accruing.

In sum, we affirm the trial court's finding that notice of the appellant's debt was constitutionally sufficient and did not violate the appellant's due process rights. We further conclude that the doctrine of laches is not available to the appellant as a defense in this case. However, we find that the trial court erred in applying retroactively the child support guidelines of Code § 20-108.2 in determining the appellant's debt.

Accordingly, we reverse the decision of the trial court as to the amount of the appellant's debt and remand this cause for a redetermination of that amount in a manner consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Elder, J., concurred.

Benton, J., dissenting.

The Fifth and Fourteenth Amendments to the United States Constitution guarantee that the government may not deprive a person of property without due process of law. Article I, § 11 of the Constitution of Virginia provides the same guarantee. At a minimum, the due process clauses require that any deprivation of life, liberty or property by the government "be preceded by notice . . . appropriate to the nature of the case." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 313 (1950). Even though there may be many areas of the law where notice is given only after a

debt or liability has accrued, a constitutional limitation on government often "requires greater precautions in its proceedings than the business world accepts for its own purposes." *Id.* at 319. The doctrine of necessaries, notwithstanding, the government is constrained by the due process clauses of the constitutions.

The pertinent facts as found in the trial judge's opinion letter are as follows:

Clyde Morris married Daisy Morris prior to 1970. In 1970 a child was born, Stanley, and the parties thereafter separated in 1972. At the time of separation the parties were living in a trailer beside his father and mother-in-law in Madison County. Mr. Morris was ready to move the trailer to another location when his wife left and moved in with her parents next door. He claims that when he tried to speak to her an altercation arose and he got charged with assault and battery. This was the event of the separation and thereafter he tried to pay her support by offering her cash money for herself and the child and she refused to take it. He claims she said she did not want any support. Further, Mr. Morris testified that his mother and father tried to help her, which she refused and that he also had a place set up to for them to move but she refused that assistance as well. Mr. Morris had no contact with his wife or child from 1972 until 1983. In March of 1983 he was incarcerated in the state penitentiary system where he stayed until he was released in November of 1986.

At or about the time he was incarcerated Mrs. Morris made application for Aid to Dependent Children and listed Mr. Morris' address as the Joint Security Complex. Later, she notified the Department that he was incarcerated and would be getting out in June of 1986. After his release he lived in Stanardsville and was never contacted by the Department of Social Services about paying child support of his child or reimbursing the state for public assistance paid for his child. The first notice he received was an administrative order entered by the Bureau of Support dated September 5, 1989. He responded to the administrative order and noted his appeal. The Bureau of Support originally wanted him to pay

back $8,000.00, but later reduced it to $4,160.00. In June of 1988 the son turned 18 so this sum is the fixed amount in dispute.

The dispute in this case concerns what process is due a parent at the time the government makes a "payment of public assistance . . . for the benefit of any dependent child . . . [and thereby] creates a debt due and owing to the [government] by the person . . . who [is] responsible for the support of such child." Code § 63.1-251. I do not agree that Morris has not proved a due process violation. The act of paying public assistance to Morris' wife for the benefit of their child created a debt that was due and owed by Morris and, thus, affected a deprivation of his property interests. The precise issue here is the constitutional adequacy of a statutory procedure that allows notice of the debt first to be given six years after payments were commenced, even though Morris' exact location was known when payments commenced and during the entire six years. At a minimum, Morris was entitled to notice at the time payment of assistance commenced, which was the statutory determination that a debt was due and owing, and certainly, in any event, Morris was due notice prior to the passage of six years.

"[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by the governmental action." *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961). It is undisputed that the government has an interest in "promot[ing] the efficient and accurate [provision] of support for financially dependent children." Code § 63.1-249. However, the government has no interest in supplanting the role of the parent as the primary source of child support. No governmental function or interest is promoted by delaying notice to a parent whose location is known when the payment of assistance is made to a dependent child. The statutory purpose is promoted by prompt notification. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434-35 (1982). Moreover, the government has not shown that it will be burdened or that the process of ensuring prompt assistance to needy dependents will suffer if notice is sent to the responsible parent at that parent's last known address. Indeed, the application for assistance requests the address for the responsible parent.

The child's mother and the governmental agency have always known where Morris was located. When the mother applied for assistance she gave his precise location, and she later gave his new location after he was transferred. It is a fundamental and long standing constitutional principle that "when notice is a person's due, process which is a mere gesture is not due process." *Mullane*, 339 U.S. at 315. Waiting six years until the child reached his majority, the government's notice to Morris was a mere gesture and not a notice designed to allow the protection of his rights or the promotion of public policy. The right to be heard is meaningless unless the person entitled to notice receives it at a time when his or her rights can be effectively exercised. I would hold that the State may not, consistent with the obligations imposed on it by the Due Process Clauses of the state or federal constitutions, delay for six years giving notice to a parent, whose location is known, that it seeks to obtain reimbursement for public assistance payments.

As a consequence of delaying the notice, the government not only deprived Morris of a reasonable opportunity to avail himself of other remedies, but also delayed the administrative hearing to a time when the issues that needed to be adjudicated were not seasonal.

> What the constitution does require is "an opportunity . . . granted at a meaningful time and in a meaningful manner," "for [a] hearing appropriate to the nature of the case. . . ." In short, "within the limits of practicability," a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause.

*Boddie v. Connecticut*, 401 U.S. 371, 378-79 (1971)(citations omitted). Morris' right not to be deprived of property without due process entitled him to an administrative hearing with respect to the assessed debt within a reasonable time after the governmental agency made the assessment. A delay of six years is not within the realm of reason.

> We also discern little or no state interest, and the State has suggested none, in an appreciable delay in going forward with [the administrative] hearing. On the contrary, it would seem as much in the State's interest as [the responsible parent] to have an early and reliable determination with respect

to the [issues].

*Barry v. Barchi*, 443 U.S. 55, 66 (1979).

If the government had sent Morris within a reasonable time notice of the payment of assistance to his child, Morris had available to him the option of seeking a court order with respect to his support obligations. *See* Code § 63.1-251. At that time, Morris could have proved that the child's mother refused support payments that he offered, that the child's mother refused assistance for the child from Morris' parents, and that the child's mother rejected Morris' offer to provide a residence for her and the child. The effect of delaying notice and a hearing for six years, which occurred after the child's majority, deprived Morris of the opportunity to minimize his property loss through in-kind payments, including the use of the residence. Moreover, he was deprived of an opportunity to prove that the mother was not eligible for the governmental assistance or some part of it.

Although in *State v. Dionne*, 131 N.H. 630, 557 A.2d 653 (1989), the court concluded that no interest was served in giving notice and a hearing to a parent to contest the need for support prior to the time the state sought reimbursement from the parent, no appreciable delay occurred in that case between that payment and the notice. *Id.* at ____, 557 A.2d at 655. The court's emphasis on the doctrine of necessities rather than the notice requirement of the due process clause can be explained by the parent's failure to establish that the passage of six months represented a denial of an "opportunity to be heard 'at a meaningful time.' " *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The Virginia statute in question in this appeal is constitutionally infirm precisely because it does not ensure either timely notice of the debt that is due or a timely hearing after the administrative determination that a debt is due and owing. The statute contains no parameters and, thus, leaves the responsible parent subject to unlimited liability and passage of time before notice and hearing are given. "[T]he provision for an administrative hearing, neither on its face nor as applied in this case, assured a prompt proceeding and prompt disposition of the outstanding issues. . . ." *Barchi*, 443 U.S. at 66. "[T]he State owes to each individual that process which, in light of the values of a free society, can be characterized as due." *Boddie*, 401 U.S. at 380.

I believe that the holdings in *Gresham v. Department of Human Resources*, 257 Ga. 747, 363 S.E.2d 544 (1988), and *Baker v. Department of Health and Rehabilitative Services of Virginia*, 526 So. 2d 1057 (Fla. App. 1988), are consistent with the requirements of due process and represent valid public policy considerations. As the *Gresham* court stated:

> "[W]here parents are divorced and custody is awarded to one parent, where the parent not having custody has not been ordered by any court to pay child support, and where the nonpaying parent's address is known or can be ascertained, the state . . . must notify the parent of the duty of support and of the application for AFDC payments before such parent becomes obligated to reimburse the state for such payments. [First,] we do so . . . to protect parents not otherwise subject to a court order or agreement as to child support, so that such parents may contest eligibility for AFDC payments or keep records of the support they in fact are providing. A parent should not be liable to the state for AFDC payments made, without notice to the parent, to ineligible recipients or when the parent is in fact paying for the support of a child. Second, we do so because the failure to provide for notice and an opportunity to be heard could render the state's right to recovery unconstitutional for lack of notice and due process."

*Id.* at 749-50, 363 S.E.2d at 546 (quoting *Burns v. Swinney*, 252 Ga. 461, 464, 314 S.E.2d 440, 443 (1984)).

Given reasonable notice of assistance, Morris could have contested the mother's eligibility to receive payments or could have sought a change in the child's custody status. He also could have obtained an adjudication of his inability to pay all or part of the support or to pay support in-kind by furnishing a residence to his family. Where, as here, Morris' support obligation has not been determined by court order, the governmental delay in sending notice after six years had passed deprived Morris of the opportunity to obtain an adjudication of his obligation on the then current circumstances and allowed Morris to be subjected to an almost unlimited liability without notice to him.

For these reasons, I believe that the failure to provide notice and a hearing until the lapse of six years after the debt was cre-

ated constitutes a due process violation. Accordingly, I dissent and would reverse the judgment for this reason.