Merrimack
No. 91-392

## WILLIAM C. GILES

v.

## MARGARET M. GILES

December 29, 1992

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the brief and orally), for the plaintiff.

*Shaheen, Cappiello, Stein & Gordon*, of Concord (*Peter G. Callaghan* and *Robert A. Stein* on the brief, and *Mr. Stein* orally), for the defendant.

HORTON, J.   The plaintiff, William C. Giles, appeals an order by the Superior Court (*O'Neill*, J.), approving modifications to a divorce decree. He argues that the superior court: (1) erred in failing to order the defendant, Margaret M. Giles, to pay child support in accordance with the State Child Support Guidelines, RSA chapter 458-C; (2) erred in holding him liable for arrearages that accrued after he petitioned the court to modify his child support obligations; and (3) abused its discretion in ordering him to share transportation costs incident to the defendant's exercise of her child visitation rights. We affirm in part and reverse in part.

The parties were divorced in June 1986 after having resided in Concord for several years. The original divorce decree placed primary physical custody of the parties' two minor children with the defendant, who had moved to New Jersey. It granted the plaintiff visitation rights, which were to be exercised at his expense. The decree also required the plaintiff to pay the defendant $750 per month in alimony until June 1989, and approximately $1,300 per month in child support. In September 1986, the parties executed a stipulation, which provided that neither the plaintiff nor defendant would "seek any modification of the decree as it relates to alimony and child support absent a substantial change of circumstances." The stipulation defined such circumstances as a "health problem or catastrophe or some unknown situation not currently extant between the parties."

In early 1990, the parties' daughter, Megan, requested that she be allowed to move to New Hampshire to live with the plaintiff. In March 1990, the parties, by stipulation, modified the original decree to transfer primary physical custody of Megan to the plaintiff. The stipulation specified that the plaintiff would continue to pay $1,300 per month in child support to the defendant, who retained physical custody of the parties' son, Billy. In October 1990, the plaintiff petitioned the superior court to modify his support obligation to $650 per month. He claimed that business problems had impaired his "per-

sonal income and resources," such that he could no longer "pay the defendant the ordered monthly support, consistent with supporting himself" and his daughter. After October 1990, but prior to the superior court's ruling on his petition, the plaintiff reduced his child support payments to $650 per month. In January 1991, he amended his petition to include a request that he receive primary physical custody of Billy as of June 1991.

On July 2, 1991, following a hearing on the plaintiff's petition, a Master (*Bruce F. DalPra*, Esq.) recommended entry of an order awarding primary physical custody of Billy to the plaintiff. The order required the defendant, who at that time was preparing to remarry and move from New Jersey to Louisiana, to pay all costs associated with ordinary weekend visitation, but it required the plaintiff to share transportation costs incident to all other visitation periods, such as holidays and school vacations. Finally, with regard to the plaintiff's requested modification of his child support obligation, the order terminated the plaintiff's support obligations as of July 1, 1991, the date he received custody of Billy. The master declined to retroactively modify the plaintiff's past support obligation, and ordered him to make payments in arrears totaling $5,200. The superior court approved the master's recommended order on July 31, 1991.

## I. Compliance With Child Support Guidelines

On appeal, the plaintiff first argues that the superior court erred in failing either to order the defendant to pay child support pursuant to the child support guidelines, RSA chapter 458-C, or alternatively to make a specific finding that explained its reasons for departing from the guidelines.

The legislature enacted the child support guidelines in 1988 to establish a "uniform system" for determining the amount of child support to be awarded. RSA 458-C:1. Under the guidelines, the total support obligation is based on the number of children requiring support, and a percentage of the net income of both the custodial and noncustodial parents. RSA 458-C:3, II(a). The total obligation is then divided between the parents in proportion to their respective incomes. RSA 458-C:3, II(b). The legislature has mandated that the guidelines shall apply in all child support cases, including orders modifying an existing support order. RSA 458-C:4, I. There is a "rebuttable presumption" that application of the guidelines in a particular case will establish the correct amount of child support. RSA 458-C:4, II. This presumption may be rebutted only through a "writ-

ten finding or a specific finding by the presiding officer on the record that the application of the guidelines would be unjust or inappropriate in a particular case." *Id.* Under RSA 458-C:5, a court may adjust its application of the guidelines if it is shown by a preponderance of the evidence that "special circumstances" exist.

Affording the statute its "plain and ordinary meaning," *N.H. Div. of Human Services v. Hahn,* 133 N.H. 776, 778, 584 A.2d 775, 776 (1990), we find that it clearly mandates that the superior court either apply the guidelines to determine the parties' respective support obligations, or make a specific finding on the record that application of the guidelines would be unjust or inappropriate. *See* RSA 458-C:4, II & IV; *State v. Dionne,* 131 N.H. 630, 633, 557 A.2d 653, 655–56 (1989). The superior court neither ordered the defendant to pay child support pursuant to the guidelines, nor specifically stated its reasons for departing from the guidelines. Thus, we find that its order did not comport with the letter of RSA chapter 458-C.

The defendant argues that the plaintiff waived this error by failing to demand, in either his October 1990 petition or the January 1991 amendment to the petition, that the defendant pay child support pursuant to the guidelines.

It is well established that this court will not consider issues raised on appeal that were not presented in the superior court. *See Daboul v. Town of Hampton,* 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983). Moreover, we are cognizant of the wide discretion afforded trial judges in matters of divorce, alimony and child support, and where possible have declined to require "use of fixed formulas and mechanical decisional techniques" in such cases. *Economides v. Economides,* 116 N.H. 191, 194, 357 A.2d 871, 873 (1976). The present case, however, is governed by an express legislative directive that the level of child support be calculated according to the guidelines, unless the presiding officer makes a specific finding that application of the guidelines would be unjust or unfair. *See* RSA 458-C:4, I–II. Once a case involving the issuance or modification of a child support order is properly before a court, application of the guidelines is not contingent on a specific request by the parties.

The defendant further argues that through their June 1986 stipulation, the parties waived the right to modify the child support agreement absent a substantial change in circumstances. In support of this claim, the defendant cites *Morrill v. Millard (Morrill),* 132 N.H. 685, 689–90, 570 A.2d 387, 389 (1990), in which we overturned a

modification to a child support agreement based on a change that was foreseeable at the time the parties negotiated the agreement. *Morrill*, however, concerned a request to modify a child support agreement as a result of an increase in living costs, *id.* at 689, 570 A.2d at 389; it does not militate against modifications when changes occur that were neither negotiated nor reasonably foreseeable. *See Gnirk v. Gnirk*, 134 N.H. 199, 205, 589 A.2d 1008, 1012 (1991). In the present case, there was a complete change in the custody of the parties' children. This change, which was contrary to the basis of the parties' understanding when they negotiated the original support agreement, justified modification of the support agreement.

■ The defendant also argues that application of the guidelines would have been unjust or inappropriate given the disparity between the parties' wealth. At the hearing, the master received evidence indicating a disparity in the parties' incomes and spending power. It is possible that "special circumstances," RSA 458-C:5, may have justified a departure from the guidelines. Nonetheless, the superior court made no written or special finding to this effect, as required by RSA 458-C:4, II. Its decision was therefore erroneous. *See Dionne*, 131 N.H. at 633, 557 A.2d at 655–56.

■ ■ Finally, the defendant argues that the superior court's failure to make specific findings regarding the defendant's duty to pay child support constituted harmless error because application of the guidelines would not have changed the court's decision. For an error to require reversal on appeal, "it must [have been] prejudicial to the party claiming it." *Richelson v. Richelson*, 130 N.H. 137, 142, 536 A.2d 176, 179 (1987). In this case, we cannot say with certainty that the superior court's failure to apply the guidelines did not prejudice the plaintiff. At the hearing, the master received evidence indicating that in 1991, the defendant earned a salary of $24,500 as a school teacher in Milltown, New Jersey. Upon her move to Louisiana, the defendant anticipated earning a salary of $18,770. The guidelines specify that the support obligation is to be shared by the custodial and noncustodial parents, in proportion to each party's income. *See* RSA 458-C:3, II(b). As application of the guidelines may have created some obligation for support burdening the defendant, however minimal, the superior court's failure to comply with RSA 458-C:4, II cannot be characterized as harmless error. *See Dionne*, 131 N.H. at 633, 557 A.2d at 655–56 (support order that was not based on guidelines was both erroneous and prejudicial, "inasmuch as application of the guidelines would [have] result[ed] in a higher level of support for the child").

## II. Modification of Plaintiff's Support Obligation

The plaintiff next contends that the superior court erred in refusing to modify his child support obligation as of the filing of his October 1990 petition seeking such a modification.

To obtain an order modifying a support obligation, a party must show that a substantial change in circumstances has arisen since the initial award, "making the current support amount either improper or unfair." *Gnirk*, 134 N.H. at 202, 589 A.2d at 1010 (quotation omitted). *But see* RSA 458-C:7 (1992). Modification orders are measured in terms of the needs of the parties and their respective abilities to meet those needs. *Butterick v. Butterick*, 127 N.H. 731, 736, 506 A.2d 335, 338 (1986). It is well established that superior courts have broad discretion in modifying child support. *See Morrill*, 132 N.H. at 688, 570 A.2d at 389. We will not overturn a modification order unless it clearly appears on the evidence that there has been an abuse of judicial discretion. *See Fortuna v. Fortuna*, 103 N.H. 547, 548, 176 A.2d 708, 709 (1961).

We note that it would have been within the superior court's authority to order a reduction in the plaintiff's support obligation, effective as of the filing of his October 1990 petition for such a reduction. *See Maciejczyk v. Maciejczyk*, 134 N.H. 343, 346, 592 A.2d 1140, 1142 (1991) (permitting modification of support order as of the filing of the petition to modify). We would strain the bounds of logic, however, to hold that the court's authority to order a reduction mandated such a reduction, or limited the court's discretion to deny the reduction if the circumstances warranted denial.

We find that the superior court did not err in refusing to modify the support order as of the filing of the plaintiff's October 1990 petition to modify the support agreement. It is true that the plaintiff had previously assumed physical custody of his daughter, Megan. In the March 1990 stipulation, however, the plaintiff expressly agreed to accept custody of Megan without a concomitant reduction in his $1,300 support obligation. The only change in circumstances since the March agreement was a decline in the plaintiff's business and financial fortunes. Under nearly identical facts, we have refused to find a change in circumstances justifying a modification of a support order. *See Butterick*, 127 N.H. at 737, 506 A.2d at 335 (reversing modification order even though plaintiff had, subsequent to support agreement, assumed custody of one of his two children). Here, the master had ample evidence from which to conclude that the agreed $1,300 per month represented an appropriate

amount of support, so long as the defendant had custody of one child. The plaintiff's salary had far exceeded that of the defendant, and evidence indicated that he had spent lavishly prior to filing the October 1990 petition.

## III. Allocation of Visitation Costs

Finally, the plaintiff contends that the superior court abused its discretion in ordering him to share transportation costs relating to the exercise of the defendant's child visitation rights. The original June 1986 decree placed primary physical custody of the children with the defendant in New Jersey, and required the plaintiff to assume all costs associated with visiting the children. According to the plaintiff, when he received physical custody of both children, the defendant likewise should have been required to assume the entire cost of visitation.

The plaintiff has failed to establish that the master's allocation of visitation costs constituted an abuse of discretion. The master was in the best position to observe the parties and evaluate the evidence, and we will uphold his recommendation, and the order based thereon, unless it is unsupported by the evidence or erroneous as a matter of law. *See In re Adoption of Baby C.*, 125 N.H. 216, 225, 480 A.2d 101, 106 (1984). While the June 1986 decree required the noncustodial parent to shoulder all costs associated with visitation while the children lived in New Jersey, it in no way limited the superior court's ability to change this arrangement when the court later modified the parties' custody and support agreements. A great deal of evidence indicated that the plaintiff's financial condition was far stronger than the defendant's, and far less desperate than he claimed. The master could reasonably have concluded that the plaintiff should bear at least a portion of the costs associated with transporting the children between New Hampshire and Louisiana during visits with the defendant. The master did not recommend that the plaintiff pay all such transportation costs, but simply proposed that both parties share transportation costs associated with visitation during specified vacation periods. We find that the superior court acted within its discretion in ordering the parties to share these transportation costs.

*Affirmed in part; reversed in part; remanded for proceedings consistent with this opinion.*

THAYER, J., did not participate in the decision of this case; the others concurred.